FILED BY _____ D.C.

NOV 19 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.   19-cr-60101(s)  SMITH

18 U.S.C. § 1349
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 982

**UNITED STATES OF AMERICA**

**vs.**

**LUIS EDUARDO ARTEAGA,**
**ALEXA MITCHELL MONTESINOS**
    **f/k/a ALEXA MITCHELL ARTEAGA,**
**DANIEL MICHAEL HURT,**
**JEFFERY FRANKLIN PURCELL,**
**STEPHEN MARK SINKOE,**
**JARRETT ALEX PERTNOY,**
**LARRY KRIS ARNETT, and**
**MARC ALAN LEVY,**

                    **Defendants.**
_____/

### SUPERSEDING INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### Health Care Benefit Programs

1.      Title 18, United States Code, Section 24(b) defined "health care benefit program"

as "any public or private plan or contract, affecting commerce, under which any medical benefit,

item, or service is provided to any individual, and includes any individual or entity who is

providing a medical benefit, item, or service for which payment may be made under the plan or contract."

2.      Tricare was a health care benefit program of the United States Department of Defense.

3.      Tricare provided civilian health care benefits for military personnel, military retirees, and military dependents worldwide.  This program also covered survivors, former spouses, Medal of Honor recipients, and their families, and others registered in the Defense Enrollment Eligibility Reporting System.

4.      The Civilian Health and Medical Program of the Department of Veteran's Affairs (hereinafter "CHAMP-VA") was a health care benefit program in which the Department of Veteran's Affairs shared the cost of covered health care services and supplies with eligible beneficiaries.  To be eligible for CHAMP-VA, a beneficiary could not be eligible for Tricare.  The beneficiary had to also fall into one of several specific categories, including the spouse or child of a veteran who had been rated permanently and totally disabled for a service connected disability.

5.      Many private employers, including Alcon Laboratories, Inc.,  Celgene Corporation, American Airlines, Inc., Lockheed Martin Corporation, Merck & Co. Inc., and others were private employers who offered health care benefits for their employees.   The health care benefit plans for these companies, and others, were offered through, or administered by, private insurance companies or "managed care companies" such as Aetna, Humana, Kaiser Permanente, Blue Cross Blue Shield, and UnitedHealthcare.

6.      The Employee Retirement Income Security Act of 1974, as amended ("ERISA"), governed and protected the health care benefit programs sponsored by private employers and

employee organizations, including the health care benefit plans offered by Alcon Laboratories Inc., Celgene Corporation, and others.

7.      Tricare, CHAMP-VA, and the private health care plans were all "health care benefit programs" as defined by Title 18, United States Code, Section 24(b).  These health care benefit programs (collectively, the "Insurance Plans") contracted with pharmacy benefit managers to administer their prescription drug plans, including the processing and payment of claims.

8.      Express Scripts, Incorporated, CVS/Care Mark and OptumRx were pharmacy benefit managers (together, the "Pharmacy Benefit Managers").

9.      Each Insurance Plan set forth the terms, conditions, and amounts of the coverage, and the terms and conditions of payment.  The managed care company or Pharmacy Benefit Manager administering the plan had the authority, responsibility, and discretion to make coverage determinations and to process and make payments on claims.

10.     To pay claims, the Pharmacy Benefit Managers, on behalf of the Insurance Plans, required pharmacies to follow all contractual provisions, and all applicable federal and state laws and regulations.

11.     Under the terms of the insurance policies and consistent with state and federal law, the Insurance Plans were only responsible for claims for services that: (a) were "medically necessary" and actually rendered; (b) were provided by a properly licensed service provider; and (c) complied with the terms of the insurance plans, including an obligation to pay co-pays and deductibles.

12.     Tricare and CHAMP-VA were bound by additional laws and regulations designed to prevent fraud, waste and abuse of the taxpayer dollars used to fund them.  For example, pursuant to Title 42, United States Code, Section 1320(a)-7b, in order to prevent fraud, waste and abuse, it

3

was illegal for an individual or company to pay "any remuneration (including any kickback, bribe, or rebate) directly or indirectly," to any person or company to induce that person or company to refer an individual to receive any item or service that is paid for in whole or part by a Federal health care benefit program, including Tricare and CHAMP-VA.

**Executive Pharmacy, LLC**

13.     Executive Pharmacy, LLC ("Executive Pharmacy") was a compounding pharmacy that was organized as a limited liability company under the laws of the State of Florida.

14.     Executive Pharmacy was located in Broward County, Florida.

15.     Executive Pharmacy was owned and controlled by companies and individuals, including **LUIS EDUARDO ARTEAGA** and **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA**.

16.     Pharmacy compounding is a practice in which a licensed person, such as a pharmacist, or someone under the pharmacist's supervision, combines, mixes, or alters ingredients to create a drug tailored to the specific needs of an individual patient.

17.     A patient may need a compounded drug for several reasons, some of which are: because of an allergy to a product in a commercially available drug; the need for a specific dose; the commercially available drug is in short supply or is being discontinued; or because a compounded drug may be applied to the skin instead of being taken orally.

18.     Executive Pharmacy contracted with the Pharmacy Benefit Managers and provided prescription drug services to beneficiaries of the Insurance Plans.

**Submission and Payment of Claims by Wire and Mail/Commercial Interstate Carrier**

19.     Executive Pharmacy submitted claims for payment by the Insurance Plans to the Pharmacy Benefit Managers through software that caused the forwarding of the claims over the

internet. The computer servers for the Pharmacy Benefit Managers where the claims were received were located in Arizona (CVS/Caremark), New Jersey (Express Scripts, Incorporated), Illinois and Minnesota (OptumRx).

20.     The Insurance Plans, through the Pharmacy Benefit Managers, paid Executive Pharmacy by wire transfers or by sending a check via mail or commercial interstate carrier from out of state.

## COUNT 1
### Conspiracy to Commit Mail and Wire Fraud
### (18 U.S.C. § 1349)

21.     Paragraphs 1 through 20 of the General Allegations section of this Indictment are re-alleged and incorporated as though fully set forth herein.

22.     From in or around January 2014, through in or around May 2016, in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendants,

**LUIS EDUARDO ARTEAGA and**
**ALEXA MITCHELL MONTESINOS**
**f/k/a ALEXA MITCHELL ARTEAGA,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others, known and unknown to the United States Attorney, to violate:

(a)     Title 18, United States Code, Section 1341 ("Mail Fraud"), that is, to knowingly and with intent to defraud devise, and intend to devise, any scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and knowingly cause to be delivered any matter or thing by mail and private and commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme and artifice, and for attempting to do so; and

(b)       Title 18, United States Code, Section 1343 ("Wire Fraud"), that is, to knowingly and with intent to defraud devise, and intend to devise, any scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmit and cause to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme and artifice.

## PURPOSE AND OBJECT OF THE CONSPIRACY

23.       It was the purpose and object of the conspiracy for the defendants, **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA,** and their co-conspirators to unlawfully enrich themselves by, among other things: (a) causing the submission of false and fraudulent claims for reimbursement to Tricare, the health care benefit programs sponsored by Alcon Laboratories Inc. and Celgene Corporation, and other health care benefit programs, for compound prescriptions medications; (b) concealing the submission of such false and fraudulent claims; (c) concealing the receipt and transfer of proceeds from the fraud; and (d) diverting proceeds of the fraud for their personal use and the personal use of their co-conspirators.

## MANNER AND MEANS

The manner and means by which the defendants, **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA,** and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others things, the following:

24.       Between in or around January 2014 and May 2016, **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** caused the submission to Express

Scripts, Incorporated of false and fraudulent prescriptions for herself, which prescriptions purported to be prescribed by R.B., a Doctor of Osteopathic Medicine, and thereby caused the health care benefit program sponsored by Alcon Laboratories Inc. to pay approximately $300,675.03 to Executive Pharmacy.

25.     **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** also caused the submission of false and fraudulent claims for other persons, which purported to be signed by other healthcare providers. For example:

(a)     On or about April 28, 2014, **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** caused a facsimile to be sent to Executive Pharmacy for a false and fraudulent prescription for L.S., which prescription purported to be signed by C.A., a Medical Doctor; and

(b)     On or about April 30, 2014, **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** caused a facsimile to be sent to Executive Pharmacy for a false and fraudulent prescription for A.F., which prescription purported to be signed by J.P., a Medical Doctor.

26.     For purposes that included preventing A.F. from discovering the false and fraudulent prescription in her name, **LUIS EDUARDO ARTEAGA** directed staff at Executive Pharmacy to maintain an Excel spreadsheet, referred to as a "smartsheet," which in reference to A.F. stated, "Do not call."

27.     Executive Pharmacy, at the direction of **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA**, caused the submission of claims for the April 28, 2014 false and fraudulent prescription for L.S., and the April 30, 2014 false and fraudulent prescription for A.F., to the health care benefit programs sponsored by Alcon Laboratories Inc. and Celgene

Corporation, through the Pharmacy Benefit Managers, thereby causing them to pay Executive Pharmacy approximately $49,738.60 for the two prescriptions and their refills.

28.     **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** received payment based, in part, on the amount the health care benefit programs paid for prescriptions that she caused to be submitted by Executive Pharmacy.

29.     After the health care benefit program sponsored by Alcon Laboratories, Inc. paid for the April 28, 2014 false and fraudulent prescriptions in the name L.S., which purported to be prescribed by C.A., a Medical Doctor, **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** recruited L.S. to refer future prescriptions to Executive Pharmacy.

30.     To recruit L.S., on or about June 12, 2014, **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** sent an email to L.S. attaching a spreadsheet showing amounts paid or owed to **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** based on false and fraudulent prescriptions for which she had already caused Executive Pharmacy to submit claims, including a false and fraudulent prescription for herself which purported to have been prescribed by R.B., a Doctor of Osteopathic Medicine.

31.     As a result of being recruited by **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA**, between approximately June 12, 2014 and October 6, 2015, L.S., who then became a co-conspirator, caused payment by health care benefit programs sponsored by Alcon Laboratories Inc. and Celgene Corporation to Executive Pharmacy of approximately $929,661.69 for prescriptions, most of which were not medically necessary.

32.     Executive Pharmacy, at the direction of **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA,** and others, paid L.S.

approximately 20% of the amount the Insurance Plans paid to Executive Pharmacy for prescriptions L.S. submitted.

33.     To disguise the payments to **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** and L.S. for their false and fraudulent and medically unnecessary prescriptions, Executive Pharmacy, at the direction of **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA,** and others, implemented the "vice versa" scheme.

34.     Under the "vice versa" scheme, Executive Pharmacy paid **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** for prescriptions referred by L.S. and paid L.S. for prescriptions referred by **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA**. She and L.S. would later ensure they each received the correct amount owed based on their own false and fraudulent and medically unnecessary prescriptions by one writing a check to the other for any differential.

35.     The co-conspirators communicated with each other via e-mail regarding the "vice versa" scheme. For example, on or about October 30, 2015 at 12:06 p.m., L.S. received an email from a co-conspirator stating, "Luis **[LUIS EDUARDO ARTEAGA]** told me to start the vice versa effective last pay check so this is the second time. Call me if you have any more questions."

36.     In furtherance of the "vice versa scheme," on or about November 30, 2015, Executive Pharmacy, at the direction of **LUIS EDUARDO ARTEAGA,** paid L.S. $3,387.51. That entire amount was owed to **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** by Executive Pharmacy for her own false and fraudulent prescriptions.

37.     As a result, L.S. wrote a check for that entire amount, $3,387.51, to **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA,** which **ALEXA**

9

**MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** deposited on or about December 3, 2015.

38.     To further this scheme and artifice, **LUIS EDUARDO ARTEAGA** and **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA**, and their co-conspirators used wire communications, the mail, and private and common interstate carrier.

All of which is in violation of Title 18, United States Code, Section 1349.

### COUNT 2
**Mail Fraud**
**(18 U.S.C. § 1341)**

39.     Paragraphs 1 through 20 and 24 through 38 of this Indictment are incorporated by reference as though set forth fully herein.

40.     Beginning in or around January 2014, and continuing through in or around May 2016, in Broward and Miami-Dade Counties, in the Southern District of Florida and elsewhere, the defendants,

**LUIS EDUARDO ARTEAGA and**
**ALEXA MITCHELL MONTESINOS**
**f/k/a ALEXA MITCHELL ARTEAGA,**

did knowingly and with intent to defraud, devise, and intend to devise, any scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and knowingly cause to be delivered any matter or thing by mail and private and commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme and artifice, and attempting to do so.

### USE OF THE MAILS

41.     On or about February 2, 2016, the defendants, **LUIS EDUARDO ARTEAGA,** and

**ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA,** for the

purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did

knowingly cause to be delivered a check that was mailed on behalf of Express Scripts, Incorporated

from Connecticut to Executive Pharmacy's payment center in Iowa, in violation of Title 18, United

States Code, Sections 1341 and 2.

### COUNTS 3-6
**Aggravated Identity Theft**
**(18 U.S.C. § 1028A(a)(1))**

42.     On or about the dates set forth below, in Broward and Miami-Dade Counties, in the

Southern District of Florida, and elsewhere, the defendant,

### ALEXA MITCHELL MONTESINOS
### f/k/a ALEXA MITCHELL ARTEAGA,

during and in relation to a felony violation of Title 18, United States Code, Section 1349, related

to conspiracy to commit wire fraud and mail fraud, as charged in Count One of this Indictment,

did knowingly possess and use, without lawful authority, a means of identification of another

person, as specified below:

| Count | Approximate Date | Means of Identification |
|-------|------------------|-------------------------|
| 3 | April 28, 2014 | Name, date of birth, and health care benefit program's membership identification number of L.S. |
| 4 | April 30, 2014 | Name, date of birth, and health care benefit program's membership identification number of A.F. |
| 5 | April 30, 2014 | Name and State of Florida medical license number of J.P., a Medical Doctor |
| 6 | June 12, 2014 | Name and National Provider Identifier of R.B., a Doctor of Osteopathic Medicine |

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

11

## COUNT 7
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

43.     Paragraphs 1 through 20 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

44.     Beginning at least as early as January of 2014, and continuing through on or about December of 2016, in Broward County, in the Southern District of Florida and elsewhere, the defendants,

**LUIS EDUARDO ARTEAGA,**
**DANIEL MICHAEL HURT,**
**JEFFERY FRANKLIN PURCELL,**
**STEPHEN MARK SINKOE,**
**JARRETT ALEX PERTNOY,**
**LARRY KRIS ARNETT, and**
**MARC ALAN LEVY,**

did knowingly and willfully combine, conspire, confederate and agree with each other, and with others known and unknown to the United States Attorney, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and, for the purpose of executing such scheme, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds in violation of Title 18, United States Code, Section 1343.

### PURPOSE AND OBJECT OF THE CONSPIRACY

45. It was the purpose and object of the conspiracy for the defendants, **LUIS EDUARDO ARTEAGA, DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL, STEPHEN MARK SINKOE, JARRETT ALEX PERTNOY, LARRY KRIS ARNETT,** and **MARC ALAN LEVY,** to unlawfully enrich themselves and others by defrauding the Insurance Plans.

### MANNER AND MEANS

The manner and means by which the defendants, **LUIS EDUARDO ARTEAGA, DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL, STEPHEN MARK SINKOE, JARRETT ALEX PERTNOY, LARRY KRIS ARNETT,** and **MARC ALAN LEVY,** and others sought to accomplish the purpose and object of the conspiracy included the following:

46.     The defendants, **DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL,** and **STEPHEN MARK SINKOE** were the owners of OPTIMUMD, a company frequently referred to as "JDS" on Executive Pharmacy's records.  OPTIMUMD owned a three percent share of Executive Pharmacy.  **DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL,** and **STEPHEN MARK SINKOE** presented and caused others to present prescriptions for medically unnecessary compounded medications to Executive Pharmacy.  Once the prescriptions were filled, Executive Pharmacy would bill the Insurance Plans, causing the Insurance Plans to pay hundreds of thousands of dollars to Executive Pharmacy.  The defendants **DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL,** and **STEPHEN MARK SINKOE** received 70% of the profits generated through Executive Pharmacy and paid others a portion of the profits.

47.     The defendants, **JARRETT ALEX PERTNOY** and **MARC ALAN LEVY** were the owners and operators of Active Care Medical Inc., a Florida corporation, incorporated on November 22, 2013.  **LARRY KRIS ARNETT** was the owner and Chief Executive Officer for Arnett Consulting Inc., a Florida corporation, incorporated on February 28, 2014.

48.     The defendants, **JARRETT ALEX PERTNOY, LARRY KRIS ARNETT,** and **MARC ALAN LEVY,** were patient recruiters; that is, they located and contacted individuals with

insurance.  Personally, as well as through other individuals and various companies, they solicited these potential patients to accept compounded medications.  Once the patients were identified, their information was provided to a telemedicine company located in Utah, which purportedly provided telemedicine services to these patients.  The telemedicine company generated prescriptions for medically unnecessary compounded medications for these patients.

49.     The defendants, **JARRETT ALEX PERTNOY, LARRY KRIS ARNETT,** and **MARC ALAN LEVY,** used pre-printed prescription pads designed to inflate the cost of the compounded medications by specifying the ingredients, without regard to the particular needs of the individual patients.  They also provided these pre-printed prescription pads to other patient recruiters and co-conspirators.

50.     Once the telemedicine company generated the prescriptions, they were wired to various compounding pharmacies, including Executive Pharmacy, so that the compounding pharmacies could provide expensive and medically unnecessary compounded medications.  The defendants, **DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL, STEPHEN MARK SINKOE, JARRETT ALEX PERTNOY, LARRY KRIS ARNETT,** and **MARC ALAN LEVY,** received a portion of the profits from each prescription that was paid for by the Insurance Plans.  After the pharmacy filled the prescription, the Insurance Plan would be billed for the prescription.  Once the Insurance Plan paid Executive Pharmacy or another compounding pharmacy for the medication, a set percentage of this payment was provided to the defendants.

51.     **LUIS EDUARDO ARTEAGA** participated and assisted in the conspiracy by maintaining and directing others to maintain spread sheets that recorded the name of the particular patient recruiter, the prescriptions that the particular patient recruiter caused to be generated, the

person for whom the recruiter worked, and the percentage of the Insurance Plans' prescription reimbursement to which the recruiter was entitled.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 8
### Conspiracy to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

52.     Paragraphs 1 through 20, and 46 through 51 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

53.     Beginning in or around January of 2014, and continuing through in or around December of 2015, in Broward County, in the Southern District of Florida and elsewhere, the defendants,

**LUIS EDUARDO ARTEAGA,**
**ALEXA MITCHELL MONTESINOS**
**f/k/a ALEXA MITCHELL ARTEAGA,**
**DANIEL MICHAEL HURT,**
**JEFFERY FRANKLIN PURCELL, and**
**STEPHEN MARK SINKOE,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Federal health benefit care programs, that is, Tricare and CHAMP-VA.

## PURPOSE AND OBJECT OF THE CONSPIRACY

54.     It was the purpose and object of the conspiracy for the defendants, **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA, DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL,** and **STEPHEN MARK SINKOE,** to unlawfully enrich themselves by, among other things, offering and paying kickbacks in return for referring Tricare and CHAMP-VA beneficiaries to Executive Pharmacy to receive compounded medications.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA, DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL,** and **STEPHEN MARK SINKOE,** sought to accomplish the purpose and object of the conspiracy included, among others, the following:

55.     Executive Pharmacy, at the direction of **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA**, and others, offered and paid kickbacks to patient recruiters in exchange for recruiting patients, including Tricare and CHAMP-VA beneficiaries, who agreed to order and receive compounded medications from Executive Pharmacy.

56.     Executive Pharmacy at the direction of **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA, DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL, STEPHEN MARK SINKOE,** and others, attempted to disguise the illegal nature of the kickback payments through: (1) the use of a contract to disguise illegal kickback payments to members of the conspiracy; (2) purported employment arrangements whereby kickbacks were made to appear to be salary; and (3) marketing contracts, whereby kickbacks were made to appear to be payments for marketing services, when, in fact, the

payments were funneled to patient recruiters for referring patients to Executive Pharmacy to receive compounded medications.

57.     **LUIS EDUARDO ARTEAGA**, **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA**, **DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL, STEPHEN MARK SINKOE,** and their co-conspirators used the promise and the payment of kickbacks to procure the referral of prescriptions for compounded medications to Executive Pharmacy, which prescriptions were paid for by Tricare and CHAMP-VA.

58.     **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA**, **DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL, STEPHEN MARK SINKOE,** and their co-conspirators used a portion of the approximately $18,440,230.68, that Tricare paid and $450,844.41 that CHAMP-VA paid to Executive Pharmacy, to pay kickbacks.

### OVERT ACTS

In furtherance of the conspiracy, and to accomplish its purpose and object, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

59.     On or about May 29, 2014, **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA** sent an email to L.S. stating "[w]e will pay you **20% of what the insurance pays us for every RX one of your doctor sends. Including refills**" (bold in original).

60.     At **LUIS EDUARDO ARTEAGA's** direction, Executive Pharmacy provided each patient recruiter with a facsimile number so prescriptions the patient recruiter referred to Executive Pharmacy could be tracked.

61.     At **LUIS EDUARDO ARTEAGA's** direction, Executive Pharmacy maintained a spreadsheet showing the percentage of the amount paid to Executive Pharmacy by Tricare and

CHAMP-VA, and other health care benefit programs, that would be paid as a kickback to the patient recruiter.

62.    On or about August 15, 2014, **LUIS EDUARDO ARTEAGA** wrote a check to OPTIMUMD for $10,750.38, as its percentage of the revenues from payments from the Insurance Plans, including Tricare and CHAMP-VA.

63.    On or about August 29, 2014, **LUIS EDUARDO ARTEAGA** wrote a check to OPTIMUMD for $63,355.96, as its percentage of the revenues from payments from the Insurance Plans, including Tricare and CHAMP-VA.

64.    On or about February 2, 2015, **JEFFERY FRANKLIN PURCELL** wrote a check for $4,856.23 to ER Pro, a company owned by patient recruiter E.R., as its share of the profits from payments by the Insurance Plans, including Tricare and CHAMP-VA.

65.    On or about June 8, 2015, **JEFFERY FRANKLIN PURCELL** wrote a check for $126,899 to Arnett Consulting Inc., a company owned by LARRY KRIS ARNETT, as its share of the profits from payments by the Insurance Plans, including Tricare and CHAMP-VA.

66.    On or about July 22, 2015, **STEPHEN MARK SINKOE** wrote a check for $1,095 to A.R., a marketer, as his share of the profits from payments by the Insurance Plans, including Tricare and CHAMP-VA.

67.    On or about August 4, 2015, **STEPHEN MARK SINKOE** wrote a check for $12,041 to Arnett Consulting Inc., a company owned by LARRY KRIS ARNETT, as its share of the profits from payments by the Insurance Plans, including Tricare and CHAMP-VA.

68.    On or about August 24, 2015, **JEFFERY FRANKLIN PURCELL** wrote a check for $11,690 to Active Medical Care, a company owned by JARRETT ALEX PERTNOY and

MARC ALAN LEVY, as its share of the profits from payments by the Insurance Plans, including Tricare and CHAMP-VA.

69.     On or about August 24, 2015, **STEPHEN MARK SINKOE** wrote a check for $4,422 to Active Medical Care Inc., a company owned by JARRETT ALEX PERTNOY and MARC ALAN LEVY, as its share of the profits from payments by the Insurance Plans, including Tricare and CHAMP-VA.

70.     On or about November 10, 2015, **DANIEL MICHAEL HURT** wrote a check for $8,103 to Arnett Consulting Inc., a company owned by LARRY KRIS ARNETT, as its share of the profits from payments by the Insurance Plans, including Tricare and CHAMP-VA.

71.     On or about November 13, 2015, **DANIEL MICHAEL HURT** wrote a check for $23,057 to Active Care Medical Inc., a company owned by JARRETT ALEX PERTNOY and MARC ALAN LEVY, as its share of the profits from payments by the Insurance Plans, including Tricare and CHAMP-VA.

72.     On or about December 22, 2015, **DANIEL MICHAEL HURT** wrote a check for $11,553 to Active Care Medical Inc., a company owned by JARRETT ALEX PERTNOY and MARC ALAN LEVY, as its share of the profits from payments by the Insurance Plans, including Tricare and CHAMP-VA.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 9-11
### Payment of Kickbacks in Connection with a Federal Health Care Benefit Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

73.     Paragraphs 1 through 20, and 55 through 72 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

74.     On or about the dates set forth below, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**LUIS EDUARDO ARTEAGA and
ALEXA MITCHELL MONTESINOS
f/k/a ALEXA MITCHELL ARTEAGA,**

did knowingly and willfully offer and pay any remuneration, that is, kickbacks and bribes, overtly and covertly, in cash and in kind, in the approximate amount set forth below, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care benefit program, that is, Tricare, as set forth in each Count below:

| Count | Approximate Date of Kickback Payment | Approximate Amount of Kickback Payment | Kickback Payment Made to | Tricare Beneficiary |
|---|---|---|---|---|
| 9 | January 15, 2015 | $950.64 | L.S. | M.K. |
| 10 | April 8, 2015 | $3,037.72 | N.A. | N.A.; V.A.; C.A.; and B.A. |
| 11 | June 4, 2015 | $5,354.68 | E.R. | R.R. |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

**FORFEITURE**

1.     The allegations contained in this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which one or more of the defendants, **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA, DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL, STEPHEN MARK**

**SINKOE, JARRETT ALEX PERTNOY, LARRY KRIS ARNETT, and MARC ALAN LEVY**, have an interest.

2.    Upon conviction of a violation of, or conspiracy to commit a violation of, Title 18, United States Code, Section 1349, as alleged in Counts 1 and 7 of this Indictment, the defendants, **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA, DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL, STEPHEN MARK SINKOE, JARRETT ALEX PERTNOY, LARRY KRIS ARNETT,** and **MARC ALAN LEVY,** shall each forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.    Upon conviction of a violation of, or conspiracy to commit a violation of, Title 18, United States Code, Sections 1341, 1343, 1349, and Title 42, United States Code, Section 1320a-7b, as alleged in this Indictment, the defendants, **LUIS EDUARDO ARTEAGA, ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA, DANIEL MICHAEL HURT, JEFFERY FRANKLIN PURCELL, STEPHEN MARK SINKOE, JARRETT ALEX PERTNOY, LARRY KRIS ARNETT,** and **MARC ALAN LEVY,** shall each forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7).

All pursuant to Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), and the procedures set forth in Title 21, United States Code, Section 853, made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL.

_____
FOREPERSON


ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


CYNTHIA R. WOOD
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

LUIS EDUARDO ARTEAGA, et. al.

_____Defendants_____/

CASE NO. _19-cr-60101(s) SMITH_____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

New defendant(s)     Yes  ✓  No  _____
Number of new defendants    6
Total number of counts    11

**Court Division:** (Select One)
_  _ Miami    _  _ Key West
_✓_ FTL    _  _ WPB  _  _ FTP

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:    (Yes or No)   No
    List language and/or dialect    English

4.   This case will take _20_ days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

| | (Check only one) | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | | _____ |
| II | 6 to 10 days | _____ | Minor | | _____ |
| III | 11 to 20 days | ✓ | Misdem. | | _____ |
| IV | 21 to 60 days | _____ | Felony | | ✓ |
| V | 61 days and over | _____ | | | |

6.   Has this case previously been filed in this District Court?    (Yes or No)   No
If yes: Judge _____    Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?  (Yes or No)   No
If yes: Magistrate Case No. _____
Related miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the District of _____

Is this a potential death penalty case? (Yes or No)   No

7.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes _____    No ✓

8.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes _____    No ✓

9.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?    Yes ✓    No _____

Cynthia R. Wood
ASSISTANT UNITED STATES ATTORNEY
Court ID A5501329

\*Penalty Sheet(s) attached

REV 6/5/2020

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: LUIS EDUARDO ARTEAGA**

**Case No**: ___19-cr-60101(s) SMITH

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #: 2

Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty**: 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #: 7

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:** 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #: 8

Conspiracy to Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:** 5 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 9-11

Payment of Health Care Kickbacks

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max. Penalty:** 5 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **ALEXA MITCHELL MONTESINOS f/k/a ALEXA MITCHELL ARTEAGA**

**Case No**:    19-cr-60101(s) SMITH

Count #: 1

Conspiracy to Commit Wire and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #: 2

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:** 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Counts #: 3-6

Aggravated Identity Theft

Title 18, United States Code, Section 1028A(a)(1)

**\*Max. Penalty:** 2 Years' Imprisonment, consecutive to any other term of imprisonment

Count #: 8

Conspiracy to Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:** 5 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 9-11

Payment of Health Care Kickbacks

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max. Penalty:** 5 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   **DANIEL MICHAEL HURT**

**Case No**:    19-cr-60101(s) SMITH

Count #: 7

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: 20 Years' Imprisment; three (3) years' supervised release; $250,000 fine.

Count #: 8

Conspiracy to Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:** 5 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #:



**\*Max. Penalty:**

Count #:



**\*Max. Penalty:**

1

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   **JEFFERY FRANKLIN PURCELL**

**Case No**:   19-cr-60101(s) SMITH

Count #: 7

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #: 8

Conspiracy to Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:** 5 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #:



**\*Max. Penalty:**

Count #:



**\*Max. Penalty:**

1

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:   **STEPHEN MARK SINKOE**

**Case No**:   19-cr-60101(s) SMITH

Count #: 7

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #: 8

Conspiracy to Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:** 5 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

1

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:   JARRET ALEX PERTNOY**

**Case No**:   19-cr-60101(s) SMITH

Count #: 7

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

1

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:   **LARRY KRIS ARNETT**

**Case No**:   19-cr-60101(s) SMITH

Count #: 7

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #:



**\*Max. Penalty:**

Count #:



**\*Max. Penalty:**

Count #:



**\*Max. Penalty:**

1

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: __MARC ALAN LEVY__

**Case No**: ___19-cr-60101(s) SMITH_____

Count #: 7

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: 20 Years' Imprisonment; three (3) years' supervised release; $250,000 fine.

Count #:

**\*Max. Penalty**:

Count #:

**\*Max. Penalty**:

Count #:

**\*Max. Penalty**:

1
**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**